**ORAL ARGUMENT NOT YET SCHEDULED**

---

NOS. 22-11617 AND 22-12535

---

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

HUNT REFINING COMPANY,

*Petitioner*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

*Respondent*.

---

*On Petition for Review of Final Agency Action
of the U.S. Environmental Protection Agency*

---

**PETITIONER'S REPLY BRIEF**

---

Jonathan G. Hardin
Alexandra M. Bromer
Michael R. Huston
PERKINS COIE LLP
700 13th Street, N.W., Suite 800
Washington, D.C. 20005
(202) 654-6200
JHardin@perkinscoie.com

*Attorneys for Hunt Refining
Company*

*Hunt Refining Company v. U.S. Environmental Protection Agency,*
**Appeal Nos. 22-11617 & 22-12535**

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT (CIP)

Pursuant to Circuit Rules 26-1.1 and 26.1-2, the following is a list of the trial judges, attorneys, person, associations of person, firms, partnerships, or corporations known to the undersigned that have an interest in the outcome of this particular case:

1. **Bromer, Alexandra Magill**, Perkins Coie LLP, counsel for Petitioner

2. **Hardin, Jonathan G.**, Perkins Coie LLP, counsel for Petitioner.

3. **Harrison, Bryan J.**, Attorney, United States Department of Justice, counsel for Respondent United States Environmental Protection Agency.

4. **Hunt Consolidated, Inc.**, parent company of Hunt Refining Company (not publicly traded, and no publicly held company has a 10 percent or greater ownership interest in it).

5. **Hunt Refining Company**, Petitioner, incorporated under the laws of Delaware and an indirect wholly owned subsidiary of Hunt Consolidated, Inc.

6. **Huston, Michael R.**, Perkins Coie LLP, counsel for Petitioner.

*Hunt Refining Company v. U.S. Environmental Protection Agency,*
**Appeal Nos. 22-11617 & 22-12535**

7. **Jacobi, Patrick R.**, Attorney, United States Department of Justice, counsel for Respondent United States Environmental Protection Agency.

8. **Miller, Gregory F.**, Perkins Coie LLP, counsel for Petitioner.

9. **United States Environmental Protection** Agency, Respondent.

10. **Worsham, Karl J.**, Perkins Coie LLP, counsel for Petitioner.

Petitioner will file a revised certificate of interested persons should it become aware of a change in corporate ownership interests that would affect the disclosures required by Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-4.

Dated: May 19, 2023

*s/ Jonathan G. Hardin*
Jonathan G. Hardin
PERKINS COIE LLP

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT (CIP) ............................C-1

TABLE OF CONTENTS..............................................................................i

TABLE OF AUTHORITIES........................................................................ii

GLOSSARY............................................................................................vii

INTRODUCTION ...................................................................................... 1

ARGUMENT............................................................................................. 3

I.    Hunt's petition belongs in this Court. ............................................ 3

II.   EPA fails to justify its belated and retroactive application of an entirely new standard for hardship petitions. ...................................................................... 6

    A.    EPA actions are unlawfully retroactive................................. 7

    B.    EPA failed to mitigate the harm from its delays................. 17

III.  EPA's interpretation of the Clean Air Act is contrary to law........................................................................................... 19

IV.   EPA's brief confirms that the Denials are arbitrary and capricious. ....................................................................................... 22

CONCLUSION........................................................................................ 27

CERTIFICATE OF COMPLIANCE ........................................................ 29

CERTIFICATE OF SERVICE ................................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aliceville Hydro Assocs. v. FERC,*
800 F.2d 1147 (D.C. Cir. 1986)....................................................10, 12

*Alon Refining Krotz Springs, Inc. v. EPA,*
936 F.3d 628 (D.C. Cir. 2019)............................................................26

*Am. Mfrs. Mut. Ins. Co. v. Sullivan,*
526 U.S. 40 (1999) ..............................................................................8

*\*Americans for Clean Energy v. EPA,*
864 F.3d 691 (D.C. Cir. 2017).........................................................6, 18

*Aspen Am. Ins. Co. v. Landstar Ranger, Inc.,*
65 F.4th 1261 (11th Cir. 2023)...........................................................20

*BellSouth Telecomms., Inc. v. Se. Tel., Inc.,*
462 F.3d 650 (6th Cir. 2006) ...............................................................9

*Bd. of Regents of State Colls. v. Roth,*
408 U.S. 564 (1972) ............................................................................8

*Bowen v. Georgetown Univ. Hosp.,*
488 U.S. 204 (1988) ..........................................................................12

*Cassell v. FCC,*
154 F.3d 478 (D.C. Cir. 1998)........................................................11, 12

*Chadmoore Commc'ns, Inc. v. FCC,*
113 F.3d 235 (D.C. Cir. 1997)..............................................................9

*City Ctr. W., LP v. Am. Mod. Home Ins. Co.,*
749 F.3d 912 (10th Cir. 2014)............................................................16

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Clark-Cowlitz Joint Operating Agency v. FERC*,
  826 F.2d 1074 (D.C. Cir. 1987).............................................................10

*Clean Air Project v. EPA*,
  891 F.3d 1041 (D.C. Cir. 2018)...............................................................5

*Craker v. U.S. Drug Enf't Admin.*,
  44 F.4th 48 (1st Cir. 2022) ..............................................................9, 10

*Dalton Trucking, Inc. v. EPA*,
  808 F.3d 875 (D.C. Cir. 2015)................................................................5

*Ergon-W. Virginia, Inc. v. EPA*,
  896 F.3d 600 (4th Cir. 2018) ...............................................................13

*Falcon v. Gen. Tel. Co.*,
  815 F.2d 317 (5th Cir. 1987) ...............................................................16

*Fla. Power & Light Co. v. Lorion*,
  470 U.S. 729 (1985) .............................................................................24

*Garrett v. Univ. of Ala. at Birmingham Bd. of Trustees*,
  344 F.3d 1288 (11th Cir. 2003)............................................................16

*Gen. Elec. Co. v. EPA*,
  53 F.3d 1324 (D.C. Cir. 1995)..............................................................17

*Hermes Consol., LLC v. EPA*,
  787 F.3d 568 (D.C. Cir. 2015)..............................................................21

*Hewitt v. Comm'r of IRS*,
  21 F.4th 1336 (11th Cir. 2021).............................................................23

*\*HollyFrontier Cheyenne Refining LLC v. Renewable Fuels Ass'n*,
  141 S. Ct. 2172 (2021) ..........................................................13, 15, 20

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Kern Oil & Refining Co. v. EPA*,
   No. 21-71246, 2022 WL 3369528 (9th Cir. Aug. 16, 2022)...........13, 14

*Landgraf v. USI Film Prods.*,
   511 U.S. 244 (1994) ...................................................................................8

*Monroe Energy, LLC v. EPA*,
   750 F.3d 909 (D.C. Cir. 2014)........................................................7, 8, 9

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm*
   *Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) .................................................................................2, 22

*Nat'l Petrochemical & Refiners Ass'n v. EPA*,
   630 F.3d 145 (D.C. Cir. 2010).................................................................11

*POM Wonderful, LLC v. FTC*,
   777 F.3d 478 (D.C. Cir. 2015)................................................................10

*Qwest Servs. Corp. v. FCC*,
   509 F.3d 531 (D.C. Cir. 2007)................................................................12

*Renewable Fuels Ass'n v. EPA*,
   854 F. App'x 983 (2021).................................................................15, 16

*RMS of Ga., LLC v. EPA*,
   64 F.4th 1368 (11th Cir. 2023)................................................................4

*Romag Fasteners, Inc. v. Fossil, Inc.*,
   140 S. Ct. 1492 (2020) ..........................................................................21

*Sierra Club v. Leavitt*,
   368 F.3d 1300 (11th Cir. 2004).................................................................5

*S. Cal. Edison Co. v. FERC*,
   805 F.2d 1068 (D.C. Cir. 1986)..............................................................12

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Texas v. EPA*,
    983 F.3d 826 (5th Cir. 2020) ....................................................5

***Treasure State Res. Indus. Ass'n v. EPA*,**
    805 F.3d 300 (D.C. Cir. 2015)................................................6, 8

*United States v. Adewani*,
    467 F.3d 1340 (D.C. Cir. 2006)............................................16

*United States v. Levy*,
    416 F.3d 1273 (11th Cir. 2005)..........................................15

*United States v. Sigma Int'l, Inc.*,
    300 F.3d 1278 (11th Cir. 2002)..........................................16

*United States v. Wiszowaty*,
    506 F.3d 537 (2007)............................................................25

*Verizon Tel. Cos. v. FCC*,
    269 F.3d 1098 (D.C. Cir. 2001)..........................................12

*Williams Nat. Gas Co. v. FERC*,
    3 F.3d 1544 (D.C. Cir. 1993)..............................................11

**STATUTES**

42 U.S.C. § 7545(o)...........................................................7, 9, 12

42 U.S.C. § 7607(b) ................................................................3, 5

**REGULATIONS**

40 C.F.R. § 56.3(d)...................................................................15

87 Fed. Reg. 35,711 (June 13, 2022).....................................11

87 Fed. Reg. 54,158 (Sept. 2, 2022).................................11, 19

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

**OTHER AUTHORITIES**

Remarks on Signing the Energy Policy Act, 2005
    U.S.C.C.A.N. S17, S19..........................................................................21

Senate Report 111-45 (2009)...................................................................13

\*   Authorities upon which we chiefly rely are marked with asterisks

# GLOSSARY

| | |
|---|---|
| April Denials | April 2022 Denial of Petitions for RFS Small Refinery Exemptions |
| CAA | Clean Air Act |
| December 2022 RIN Price Analysis | EPA, An Analysis of the Price of Renewable Identification Numbers (RINs) and Small Refineries (Dec. 2022), https://nepis.epa.gov/Exe/ZyPDF.cgi?Dockey=P1016CAA.pdf, included in Pet.App. |
| DOE | U.S. Department of Energy |
| EPA | U.S. Environmental Protection Agency |
| GAO | U.S. Government Accountability Office |
| GAO Report | U.S. Government Accountability Office, Renewable Fuel Standard: Actions Needed to Improve Decision-Making in the Small Refinery Exemption Program, GAO23104273 (Nov. 2022), https://www.gao.gov/products/gao-23-104273, Pet.App. No. 22-12535, Doc. 27-2, Ex. A |
| Hunt | Hunt Refining Company |
| June Denials | June 2022 Denial of Petitions for RFS Small Refinery Exemptions |
| Pet.App. | Petitioner's Appendix |
| RFS | Renewable Fuel Standard |
| RINs | Renewable Identification Numbers |
| 2011 DOE Study | DOE, Small Refinery Exemption Study: An Investigation into Disproportionate Economic Hardship, www.epa.gov/sites/default/files/2016-12/documents/small-refinery-exempt-study.pdf |

# INTRODUCTION

EPA has egregiously mismanaged the Renewable Fuel Standard ("RFS") program, and the agency's delays and flip flops now pose an existential threat to Hunt. EPA's brief does not dispute any of the central facts: Hunt is a small refinery that, until the Denials, received hardship relief from the RFS obligation in *every year* since the program's inception. For the program years at issue here (2018–2021), the disproportionate economic burden of the RFS only grew more severe, so Hunt timely petitioned for hardship relief again. Hunt reasonably expected EPA to follow the Clean Air Act ("CAA") and apply consistent ground rules.

EPA did neither. It flagrantly ignored the statutory deadlines to set volumes and resolve Hunt's petitions within 90 days—issuing decisions years late and after the compliance years were already over. When EPA finally got around to decisions in 2022, it relied on "changing administration policies" (EPA.Br.8) to deny four years of Hunt's petitions, including reversing the prior *grant* of relief to Hunt for 2018. EPA got there only by dramatically changing its interpretation of multiple statutory terms in ways that would eliminate hardship relief forever; abandoning the Department of Energy ("DOE") scoring matrix and recommendations that EPA had relied on for a decade; and replacing them with a new "economic theory" that is empirically and demonstrably false.

On that reasoning, EPA now demands that Hunt comply with the RFS for the first time ever by obtaining multiple years' worth of com-

pliance credits (RINs) that would cost ███████████ at today's EPA-inflated prices. ████████████████████████████████████████████

████████████████████████████████████████████.

EPA's primary defense is that Hunt should have simply assumed it would never receive the Congressionally provided hardship exemption. EPA says that, even though it had granted relief to Hunt in every prior year and the company's burdens had only increased, Hunt should have purchased RINs all along while EPA blew past the statutory deadlines. But the CAA does not require a small refinery to buy RINs as if it were not experiencing disproportionate hardship. Indeed, the approach now demanded by EPA would have ████████████████████████████████ and carried massive financial risk: other small refineries that bought RINs suffered tens of millions of dollars in losses when EPA belatedly granted their hardship petitions and their RINs declined in value.

EPA's brief and that of its amici fail to resolve multiple flaws in the deficient administrative analysis. To take just one example, Hunt and fuels experts criticized EPA for completely omitting diesel fuel—which small refineries disproportionately produce and which cannot be blended with renewable fuel at the same rate as gasoline due to lack of market acceptance—from the agency's RIN-passthrough "analysis." EPA's response? A footnote consisting of a single conclusory sentence with no analysis or citation. That is textbook "arbitrary and capricious" agency action. *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto.*

*Ins. Co.*, 463 U.S. 29, 43 (1983). It is thus no surprise that three courts of appeals, including this one, have determined that small refineries are likely to succeed on their challenges to EPA's belated denials decisions.

It is 2023, and EPA is still forcing Hunt to litigate its statutory entitlement to hardship relief from five years ago. With so many years gone by, the only remedy that could address EPA's unlawful actions now is the same one that EPA itself already devised for 2018. This Court should accordingly vacate and remand the Denials to EPA with instructions to reinstate the 2018 hardship exemption previously granted, and to either grant the 2019–2021 petitions or else mitigate the harm to Hunt by permitting it to utilize the alternative compliance method that EPA offered for 2018—a method that would not require Hunt to retire RINs for the compliance years under review.

## ARGUMENT

## I.    Hunt's petition belongs in this Court.

As Hunt explained in its Response to EPA's Motion to Transfer, EPA's decisions denying Hunt's small-refinery-hardship petitions are "locally applicable" and must *by law* be based on individualized assessments of Hunt's economic circumstances—not national rules. Doc. 19 at 1-8 (citing § 7607(b)(1)).[1] Indeed, EPA's argument (EPA.Br.22) that

---

[1] Unless otherwise noted, all statutory citations are to Title 42 of the United States Code.

it has replaced individual adjudications with "nationally applicable" reasoning is part of what makes the April and June Denials contrary to the CAA. Hunt.Br.43-45. EPA's attempt to transfer this case also contradicts its prior position that decisions on hardship petitions are locally applicable and any challenges to them belong in the regional circuits. *E.g.*, EPA's Resp. Br. 2-3, *Ergon-W. Virginia, Inc. v. EPA*, No. 19-2128 (consol.) (4th Cir. May 28, 2020), Doc. 64 (arguing that challenge to hardship-petition denial was "properly venued in" the Fourth Circuit "because the action is locally or regionally applicable").

This Court's recent decision in *RMS of Georgia, LLC v. EPA* does not support transfer. 64 F.4th 1368, 1372-75 (11th Cir. 2023). First, *RMS* involved a rulemaking, *id*. at 1371-72, not "informal adjudications" as here, EPA.Br.27. Second, RMS challenged EPA's allocation of usage permits for hydrofluorocarbons, which affected the "thirty-nine other … industry firms" because Congress had capped the permits such that "[a]ny gain in permits that one firm gets must be offset by a loss to another firm and vice versa." 64 F.4th at 1373-74. EPA's decision on Hunt's small-refinery hardship petitions will not similarly affect other parties.

*Amici* argue that this case belongs in the D.C. Circuit because "[i]t is for the Administrator of the EPA, not this Court, to judge whether EPA has made a determination of nationwide scope." Amici.Br.10 (citation omitted). But EPA's own assertion that its action has "nationwide scope

or effect" is not sufficient for transfer: a case goes to the D.C. Circuit only if "nationally applicable" or "if such action is based on a determination of nationwide scope or effect *and* if in taking such action the Administrator finds and publishes that such action is based on such a determination." § 7607(b)(1) (emphasis added). It is for this Court to determine whether the action "is based on a determination of nationwide scope or effect," *see Texas v. EPA*, 983 F.3d 826, 833 (5th Cir. 2020), or "nationally applicable," *Dalton Trucking, Inc. v. EPA*, 808 F.3d 875, 880 (D.C. Cir. 2015). Amici also invoke *Sierra Club v. Leavitt*, 368 F.3d 1300, 1308 n.12 (11th Cir. 2004). But the Court there *declined* transfer because the Administrator did not find that the action was based on a determination of nationwide scope and no party had asked for transfer. *See id.* at 1308-09.

That the statute aims to "centralize judicial review of national *rules* in the D.C. Circuit," Amici.Br.10 (citation omitted), is irrelevant because, as EPA acknowledges, the Denials are not rulemakings. Moreover, Congress has directed "locally or regionally applicable" actions to the regional circuits, § 7607(b), so it is "hardly surprising that judicial review of EPA actions sometimes results in circuit court rulings that are inconsistent with other circuit court rulings." *Nat'l Env't Dev. Assoc.'s Clean Air Project v. EPA*, 891 F.3d 1041, 1044-45 (D.C. Cir. 2018). There is no more risk of inconsistency here than in previous years when multiple circuits reviewed EPA's decisions on hardship petitions from small refineries in different regions. Doc. 19 at 9-11. Anyway, all three courts presented with

these issues have been *consistent* in granting stays pending appeal, and the Supreme Court can resolve any conflicts if they arise. *See* Order, No. 22-12535 (11th Cir. Dec. 27, 2022), Doc. 33; Order, *Calumet Shreveport Refining, LLC v. EPA*, No. 22-60266 (5th Cir. Jan. 27, 2023), Doc. 209-1 ("CA5 Stay"); Order, *Sinclair Wyoming Refining Co. LLC v. EPA*, No. 22-1073 (consol.) (D.C. Cir. Mar. 30, 2023), Doc. 1992426.

## II.    EPA fails to justify its belated and retroactive application of an entirely new standard for hardship petitions.

EPA's belated and retroactive Denials violated the law in two independent ways. First, the April and June Denials unlawfully imposed severe consequences on Hunt's past conduct without fair notice. Hunt.Br.28-33 (citing multiple cases). The Fifth Circuit agreed. *See* CA5 Stay 7-8 (citing *Treasure State Res. Indus. Ass'n v. EPA*, 805 F.3d 300, 305 (D.C. Cir. 2015)). Second, even if EPA were entitled to retroactively apply the new framework, the agency failed to decide Hunt's petitions within the required 90 days and failed to mitigate the harm from its missed deadlines. Hunt.Br.33-35 (discussing *Americans for Clean Energy v. EPA*, 864 F.3d 691 (D.C. Cir. 2017) ("*ACE*")).

EPA does not meaningfully address most of Hunt's authority and the Fifth Circuit's reasoning. EPA.Br.26 n.3. Its arguments and those of amici are unpersuasive.

### A.    EPA actions are unlawfully retroactive.

1.    EPA claims the Denials are not retroactive, first, because Hunt's petitions were technically "pending" until the Denial decisions. But as the Fifth Circuit observed, "the hardship petitions remained pending only because EPA took years to issue a decision, contrary to its express obligation under the CAA to act on such petitions within 90 days." CA5 Stay 7 n.4 (citing § 7545(o)(9)(B)(iii)). A ruling in EPA's favor would thus encourage agencies to withhold actions in violation of statutory deadlines until they can implement different law. Amici are wrong that EPA was "required to apply" its approach in April and June 2022 to the pending petitions. Amici.Br.11. EPA was required to decide Hunt's petitions within 90 days of receipt and to apply the approach in effect during the compliance year at issue.

Amici also argue that the effect of the Denials is "entirely prospective," Amici.Br.19, citing *Monroe Energy, LLC v. EPA*, 750 F.3d 909 (D.C. Cir. 2014). They are wrong. Hunt cannot go back in time and make different business or compliance decisions in 2018–2021, nor go back and purchase RINs in those years. That is why EPA issued the Alternative Compliance Demonstration Approach ("ACDA") for 2018, Hunt.Br.19, which one amicus has sued to attempt to overturn. *Growth Energy v. EPA*, No. 22-1127 (D.C. Cir.). If that amicus succeeds in the ACDA challenge, then Hunt would be forced to comply with 2018 volume obligations after receiving an exemption nearly four years ago. *Monroe Energy* is

distinguishable because EPA there "finalized its standards during the compliance year," 750 F.3d at 920, whereas here it is undisputed that EPA did not act on Hunt's hardship petitions until the compliance years were over and the 90-day statutory deadlines had passed.

2.   The Fifth Circuit agrees that EPA's Denials long after Hunt had submitted its petitions, long after the statutory deadline to decide those petitions, and long after the compliance years were over, violated "'considerations of fair notice, reasonable reliance, and settled expectations.'" CA5 Stay 7-8; *Treasure State*, 805 F.3d at 305 (quoting *Landgraf v. USI Film Products*, 511 U.S. 244, 270 (1994)).

EPA's argument (Br.22-25) that Hunt is not automatically entitled to an exemption from the RFS misses the point. Hunt was "entitled to have [its] pending petitions evaluated under consistent ground rules" and decided within 90 days. CA5 Stay 7 & n.4 (citation omitted). EPA's authority is thus totally inapplicable. "There [we]re no statutory or administrative standards defining eligibility for re-employment" for the non-tenured teacher in *Board of Regents of State Colleges v. Roth*, so he was not entitled to anything after his one-year appointment expired. 408 U.S. 564, 566-67 (1972). In *American Manufacturers Mutual Insurance Co. v. Sullivan*, the statute was clear that workers were not entitled to have their providers pay for "patently unreasonable, unnecessary, and even fraudulent medical care." 526 U.S. 40, 60 (1999). And Monroe Energy was not entitled to expect a waiver of RFS volume requirements given EPA's

"broad discretion … whether" to exercise its waiver authority. *Monroe Energy*, 750 F.3d at 915. The CAA does not require EPA to waive particular volume requirements. *Id.* But it *does* require EPA to "consider the findings of the" 2011 DOE Study "and other economic factors" when evaluating small-refinery-hardship petitions and to decide them within 90 days. § 7545(o)(9)(B).

EPA's cases involving agency applications are totally unlike the situation here. The applying party in *BellSouth Telecommunications, Inc. v. Southeast Telephone, Inc.*, "did not give up or sacrifice anything in reliance on the FCC rule then in place," and the agency acted two months later. 462 F.3d 650, 663-664 (6th Cir. 2006). EPA was *years* late here, and Hunt's compliance approach relied on EPA's consistent framework from the relevant years. The FCC's December 1995 denial of Chadmoore Communications' June 1995 application to build a new radio system was not impermissibly retroactive because it "did not increase [Chadmoore's] liability for past conduct or impose new duties with respect to completed transactions." *Chadmoore Commc'ns, Inc. v. FCC*, 113 F.3d 235, 241 (D.C. Cir. 1997). Also, *Chadmoore* had notice of the new rule seven months before its application. *Id.* at 238-39, 241-42. Here EPA seeks to impose new duties on Hunt to acquire RINs respecting prior-years' production that would cost Hunt ▮▮▮▮▮▮. The botany professor in *Craker v. U.S. Drug Enforcement Administration* "raised no claim of prejudice" from the DEA's "new regulatory framework" for "registration of

prospective cannabis growers." 44 F.4th 48, 52, 64 & n.4 (1st Cir. 2022). Whereas here, the Denials applied to "compliance periods now long elapsed," "disregarded the refiners' reliance interests," and violated the 90-day statutory deadline to decide Hunt's petitions. CA5 Stay 7-8 & n.4.

3.    EPA calls the Denials "informal adjudications," but that does not make them lawful. While an agency may not be *categorically precluded* from announcing new principles in adjudications, *POM Wonderful, LLC v. FTC*, 777 F.3d 478, 497 (D.C. Cir. 2015), EPA concedes that "a retrospective application can properly be rejected when applying the new rule to past conduct or prior events would work a 'manifest injustice,'" *Clark-Cowlitz Joint Operating Agency v. FERC*, 826 F.2d 1074, 1081 (D.C. Cir. 1987), or when EPA "substitut[ed]" new law for old law that was "reasonably clear," *Aliceville Hydro Assocs. v. FERC*, 800 F.2d 1147, 1152 (D.C. Cir. 1986). *See* EPA.Br.27-29; Amici.Br.13. Both conditions are met here.

a.    The Denials cause manifest injustice. *Contra* Amici.Br.18-22. They are an abrupt departure from well-established practice, and Hunt reasonably relied on the old practice. The Denials' retroactivity imposes a huge burden on Hunt—███████. Doc. 15 at 2-3. EPA has no greater statutory interest in applying the new approach from the Denials, and holding EPA to its approach at the time of the compliance years would impose no harm on amici or other parties. Blending for the relevant years is already complete, so requiring Hunt to retire RINs now does nothing

to increase the amount of renewable fuel in those years. *Contra* Amici.Br.24. The Denials are merely a wealth transfer from small refineries like Hunt to the interests represented by amici.

EPA's reliance on *National Petrochemical & Refiners Association v. EPA* is misplaced; that case shows how the Denials prejudice Hunt. 630 F.3d 145 (D.C. Cir. 2010). There, "an adequate supply of RINs [was] available." *Id.* at 165. Here, the supply of RINs is insufficient, as EPA acknowledges. *See* 87 Fed. Reg. 35,711, 35,714 n.23 (June 13, 2022) (just 11 obligated parties (out of hundreds) hold 75% "of all available 2020 and 2021 RINs"); April 2022 ACDA at 13-14 (Pet.App. EPA-HQ-OAR-2021-0566-0107) (the few parties holding RINs will "choose to sell their RINs only at very high costs or in the alternative choose to not sell their RINs" at all); 87 Fed. Reg. 54,158, 54,160 (Sept. 2, 2022) ("small refineries … may not be prepared to comply with their renewable volume obligations … for the 2020 compliance year" and the 2019, 2020, and 2021 compliance deadlines were "compressed").

b. The "old" law was also reasonably clear. EPA had a "well established practice," *Cassell v. FCC*, 154 F.3d 478, 486 (D.C. Cir. 1998), of relying on DOE's study and scoring matrix since Congress created the small-refinery hardship exemption. Under that framework, Hunt had *always* received the exemption. Hunt.Br.31; *see Williams Nat. Gas Co. v. FERC*, 3 F.3d 1544, 1554 (D.C. Cir. 1993). This was therefore not a situation where "a party … relied on its own (rather convenient) assumption

that *unclear law* would ultimately be resolved in its favor." *Qwest Servs. Corp. v. FCC*, 509 F.3d 531, 540 (D.C. Cir. 2007) (emphasis added). EPA's approach to deciding a hardship petition was not one "of first impression" as in *Aliceville* or *Southern California Edison Co. v. FERC*, where "no agency precedent expressly addresse[d] th[e] precise issue." 805 F.2d 1068, 1071 (D.C. Cir. 1986). Nor did EPA's old approach produce "a highly uncertain outcome" as in *Cassell*. 154 F.3d at 486.

EPA argues (EPA.Br.27-28) that the old law here was not reasonably clear because it did not use an "interpretive rule" for § 7545(o)(9)(B), invoking the concurrence in *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 224 (1988) (Scalia, J.). EPA also argues that it has "greater discretion" to impose its new approach "retroactively" because it is "'rectify[ing] legal mistakes identified by a federal court.'" EPA.Br.28 (citation omitted). But the Supreme Court has never held that only an interpretive rule can create clear administrative law. And EPA was not "rectify[ing] legal mistakes identified by a federal court," *Verizon Tel. Cos. v. FCC*, 269 F.3d 1098, 1111 (D.C. Cir. 2001), because the Tenth Circuit's vacated decision has no legal force. *See infra* pp. 15-16.

Amici argue that EPA's old approach was not "authoritatively articulated outside of the same … proceeding in which it was eventually reversed." Amici.Br.15 (citing *Verizon*, 269 F.3d at 1110). They are wrong. EPA described its approach in multiple separate proceedings before the Denials, including prior adjudications of hardship petitions and

in court cases. *See, e.g.*, *HollyFrontier Cheyenne Refining LLC v. Renewable Fuels Ass'n*, 141 S. Ct. 2172, 2176 (2021); *Ergon-W. Virginia, Inc. v. EPA*, 896 F.3d 600 (4th Cir. 2018).

4.    EPA and amici argue that EPA's retroactive action is lawful because Hunt should have planned not to receive the exemption and bought RINs all along. That is preposterous. ███████████████████████

███ if it had tried to buy enough RINs despite experiencing disproportionate economic hardship. *See* Pet.App. No. 22-12535, Doc. 28 ¶¶ 12-13 (citing Pet.App. SI-251); Hunt.Br.53 (citing Pet.App. SI-243, at 8-9); *see also* 2011 DOE Study vii, 23, 34 (Pet.App. EPA-HQ-OAR-2021-0566-0002).[2] ████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███ ███████████████████████████████████████

███████████████████████████████████████. Hunt.Br.53-55. As the GAO Report explains (at 24), small refineries like Hunt "lose out" whether they purchase RINs throughout the compliance year or not.

Both the 2011 DOE Study and the GAO Report recognize those problems, and *Kern Oil* and *Wynnewood* prove them. 2011 DOE Study

---

[2] EPA mentions DOE's first small refinery study from 2009, EPA.Br.7, but Congress found it deficient, Senate Report 111-45, at 109 (2009), and DOE later determined that the 2009 study was incorrect in the 2011 study. *See* Pet.App. EPA-HQ-OAR-2021-0566-0077, at 10-11.

vii, 23, 34; GAO Report 7-8, 66. Small refineries that purchased and retired RINs for compliance lost tens of millions of dollars when EPA missed the deadlines to decide their hardship petitions and then belatedly granted relief, causing their RINs to plummet in value. *Kern Oil & Refining Co. v. EPA*, No. 21-71246, 2022 WL 3369528, at *2-*3 (9th Cir. Aug. 16, 2022); Response to Motion to Transfer at 3, *Wynnewood Refining Co. v. EPA*, No. 22-60357 (5th Cir, Aug. 8, 2022), Doc. 27; *see* GAO Report 24 (petitioning small refinery that purchased RINs lost $16 million dollars when EPA belatedly granted its petition). After EPA refused to make Kern Oil whole, the refinery had to sue EPA, and the Ninth Circuit ordered the agency to provide a credit to recover some of the large loss in RIN value "between the time when the EPA should have acted on [its] petition in October 2018 and when [EPA] ultimately granted the petition in March 2019." *Kern Oil*, 2022 WL 3369528, at *3.

Amici's attempt to undermine *Kern Oil* fails. *See* Amici.Br.23 n.8. *Kern Oil* shows that a refinery that "complied with" a single year's worth of "RFS obligations while" its petition was pending, as EPA and amici argue Hunt should have done, lost many millions of dollars. With four compliance years at issue, Hunt would have had to ███████████ ██████████████████████ if it had attempted to purchase RINs while it waited for EPA's unlawfully late decisions on its 2019 to 2021 petitions.

EPA argues that Hunt waived any argument █████████████████ ████████ while waiting for decisions on its petitions. EPA.Br.54. That

is plainly wrong, because EPA *never actually responded* to Hunt's argument and evidence ███████████████████████████████████████████████

███. Hunt.Br.53; Pet.App. SI-251. EPA cites only a one-page "general[]" "[r]esponse" in the June Denials to "many petitioning refineries['] claim [that] they cannot buy RINs ratably." Pet.App. EPA-HQ-OAR-2021-0566-0118 at B-63. Hunt argued in its motion for stay and opening brief that the explanation for EPA's Denials, including EPA's "responses" to comments, "runs counter to the evidence before the agency" and "disregards refinery-specific evidence" that ███████████████████████████████████

██████████. Hunt.Br.56; *see also* Pet.App. No. 22-12535, Doc. 28 ¶¶ 12-13 (citing Pet.App. SI-251). This is thus nothing like *United States v. Levy*, where "Levy concede[d] that he did not raise any constitutional challenges to the sentencing guidelines or his sentence or any *Apprendi*-type argument until after this Court … issued a published opinion affirming his sentences." 416 F.3d 1273, 1276 (11th Cir. 2005) (per curiam).

5.    Finally, EPA did not provide fair notice of the Denials. EPA's argument (EPA.Br.11, 29-30) that Hunt had "clear notice" in June 2021 because the Supreme Court in *HollyFrontier* reversed the Tenth Circuit's decision in *Renewable Fuels Association v. EPA*, 854 F. App'x 983 (2021), is borderline absurd. A *reversed* judgment from a different circuit involving different petitioners and different compliance years did not give Hunt notice of EPA's new approach to hardship petitions. *See* 40 C.F.R.

§ 56.3(d) (Tenth Circuit's decision did not apply nationwide). Indeed, the Tenth Circuit's (now-vacated) alternative holdings did not necessarily require EPA to deny Hunt's petitions. Nor would they have mandated the specific, brand-new statutory interpretation and methodology that the agency ultimately adopted in April and June 2022.

EPA and amici are wrong that *RFA*'s two "alternative holdings" remain good law. Hunt.Br.39-40. The Tenth Circuit "vacated" its prior judgment in *RFA* and issued a new one *affirming* EPA's grants of the hardship petitions at issue. 854 F. App'x at 984; *see also* Order and Judgment, No. 18-9533 (10th Cir. July 29, 2021), Doc. 010110555246. A vacated judgment has no precedential effect. *See United States v. Sigma Int'l, Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002); *City Ctr. W., LP v. Am. Mod. Home Ins. Co.*, 749 F.3d 912, 913-14 (10th Cir. 2014). "[W]hen a judgment is vacated all is effectually extinguished." *Falcon v. Gen. Tel. Co.*, 815 F.2d 317, 320 (5th Cir. 1987) (quotation and citation omitted).[3]

Moreover, *RFA* could not have given Hunt fair notice of the Denials because EPA did not even articulate its new approach until it issued the Proposed Denial in December 2021. *See* Amici.Br.20. And EPA's *Proposed* Denial in December 2021 was insufficient for regulated parties to

---

[3] EPA cites *United States v. Adewani*, 467 F.3d 1340, 1342-43 (D.C. Cir. 2006), and amici cite *Garrett v. University of Alabama at Birmingham Board of Trustees*, 344 F.3d 1288, 1291-92 (11th Cir. 2003). Both are unavailing because the Tenth Circuit *itself* "vacated" its prior judgment after the Supreme Court's decision.

identify "with ascertainable certainty" the standard to which EPA expected them to conform. *Gen. Elec. Co. v. EPA*, 53 F.3d 1324, 1329 (D.C. Cir. 1995). Moreover, Hunt had submitted its 2018–2021 petitions before December 2021, and the compliance years were either over (2018–2020) or nearly over (2021).

### B. EPA failed to mitigate the harm from its delays.

EPA concedes that it was required to mitigate the harm from its missed deadlines. EPA.Br.31. It argues that it did so because (1) Hunt should have purchased RINs all along; (2) EPA expected that the Tenth Circuit's decision in *RFA* would remain good law; and (3) EPA issued the so-called Extension Rule and Alternative RIN Retirement Schedule. EPA fails to show any mitigation, and the Extension Rule and the Retirement Schedule actually *exacerbate* the harm.

1. As discussed above and in Hunt's opening brief, ████████████ ████████████████████████████████████████ and it had good business reasons not to do so. EPA cannot justify its failure to mitigate by pointing to Hunt's decision ████████████████████████████ ████████████.

2. *RFA* does not absolve EPA from its obligation to minimize the harm from EPA's unlawfully late decisions. EPA had no reasonable expectation that *RFA*, a decision from another circuit concerning different refineries and different compliance years, would apply to Hunt's petitions. EPA cites no authority holding that pending litigation

involving different parties absolves an agency of its obligation to mitigate the harm to *others*. In any event, EPA had no reasonable expectation that *RFA* would remain good law, especially after the Supreme Court granted certiorari in early January 2021. And even if EPA could blame *RFA* for some delays on some small refinery hardship petitions, EPA knew by August 2021 that *RFA* was not good law. *See supra* pp. 15-16. Yet EPA waited until April and June 2022 to deny Hunt's petitions.

3.    As explained in the obligated parties' (including Hunt's) challenges to the Extension Rule and Retirement Schedule, EPA's unprecedented compression of compliance deadlines during the worst RIN market in history does nothing to mitigate the harm to Hunt. If anything, those additional rules only make things worse. *See Wynnewood Refining Co. v. EPA*, No. 22-1015 (consol.) (D.C. Cir. argued Jan. 19, 2023); *The San Antonio Refinery v. EPA*, No. 22-1276 (consol.) (D.C. Cir.).

Amici argue (Br.24) that EPA has no mitigation obligation. They are wrong. *ACE* requires more than mere "consider[ation]" of options. 864 F.3d at 718 (EPA can act late "so long as EPA reasonably considers *and* mitigates any hardship") (emphasis added). Amici have no authority for their argument that *ACE*'s mitigation requirement applies only to "*rulemaking*" deadlines, and there is no reason why *ACE* would not apply to other statutory deadlines. *ACE* speaks generally about all statutory deadlines and duties. *Id.* at 719 ("In a perfect world, agencies such as EPA would never miss their deadlines. But once they have, our

precedents in this area require that EPA reasonably balance its statutory duties with the rights of the entities it regulates.").

## III. EPA's interpretation of the Clean Air Act is contrary to law.

Hunt's brief showed (Br.35-45) that EPA's new interpretation of the CAA is impermissible because EPA (1) effectively eliminated statutory hardship exemptions, CA5 Stay 8; (2) unlawfully narrowed the meaning of "disproportionate economic hardship" to "disproportionate *compliance costs*" and eliminated the statutory requirement to consider "other economic factors"; (3) failed to meaningfully consult with DOE; and (4) refused to consider each refinery petition individually. Hunt also argued (Br.45-49) that EPA's interpretations were not entitled to any deference and that if *Chevron* applied here, then it should be overruled.[4] EPA's and amici's statutory arguments disregard the CAA's text.

1.      EPA (Br.45) and amici (Br.24-26) argue that the agency did not eliminate small-refinery exemptions because refineries can still apply for them. That is meaningless because EPA has stated that it does not ever anticipate *granting* a small refinery hardship petition again. 87 Fed. Reg. 54,158 at 54,161 n.27; *see* Pet.App. EPA-HQ-OAR-2021-0566-0117, at 63. A federal agency may not effectively repeal Congress's decision to

_____

[4] On May 1, 2023, the Supreme Court granted a writ of certiorari to consider "[w]hether [it] should overrule *Chevron*." *Loper Bright Enters. v. Raimondo*, No. 22-451.

offer statutory exemptions and then avoid judicial scrutiny by pointing to the opportunity to submit futile applications.

In the April and June Denials, EPA essentially thumbs its nose at the Supreme Court by determining that small refineries can never actually *receive* hardship relief again. EPA argues that *HollyFrontier* did not address "entitlement" to an exemption. EPA.Br.46. *HollyFrontier* obviously did not hold that EPA must *grant* all future hardship petitions, but the Court did find that Congress intended hardship exemptions to continue to be available going forward: As the Court explained, "[i]f Congress really had wanted all exemptions to cease," then it "surely [chose] an odd way to achieve it." 141 S. Ct. at 2180.

2. EPA's statutory interpretation finds no support in the statute's text or "purpose." *Contra* EPA.Br.37.

Nowhere does the statute say that RFS compliance costs *must be the sole cause* of the "disproportionate economic hardship." EPA.Br.33-37. The statutory standard, rather, is whether RFS compliance and "other economic factors" have caused a small refinery "disproportionate economic hardship." Hunt showed (Br.38) that the RFS can cause disproportionate economic hardship even if everyone's compliance costs were the same. EPA's interpretation of the words "other economic factors," *id.*, either renders that phrase meaningless and therefore surplusage, *Aspen Am. Ins. Co. v. Landstar Ranger, Inc.*, 65 F.4th 1261, 1271 (11th Cir. 2023), or else impermissibly requires inserting a caveat—

PUBLIC VERSION — CONFIDENTIAL BUSINESS INFORMATION REDACTED

"related to RFS compliance"—that does not appear in the text, *Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492, 1495 (2020). (Amici, for their part, attempt to argue that EPA considered "other economic factors." Amici.Br.26. But EPA admitted that it considered only compliance costs.)

Moreover, Hunt's interpretation is consistent with the purpose of the small refinery exemption and the CAA. *Contra* Amici.Br.24. Congress intended the RFS program to promote American energy independence, and small refineries are integral to that goal. *See, e.g.*, Remarks on Signing the Energy Policy Act, 2005 U.S.C.C.A.N. S17, S19.

3.     EPA admits that Congress "task[ed] DOE with" "studying" "how the RFS program would operate in the marketplace," EPA.Br.42, but argues that it needed only connect its staff with DOE's at some point. EPA.Br.46-47 (citing *Hermes Consol., LLC v. EPA*, 787 F.3d 568, 577 (D.C. Cir. 2015)). That is not what *Hermes* says at all. The D.C. Circuit rejected the challenger's argument *that DOE* was "obligated to engage in notice-and-comment procedures before adding a finer gradation within a preexisting scoring range"; it did not find that EPA's instruction to DOE to accept a pre-ordained RIN-passthrough assumption qualifies as meaningful consultation. *Id.* EPA's response brief confirms that DOE did not independently evaluate whether RIN-cost passthrough—the Denials' foundational assumption—was correct. EPA.Br.48-49 ("DOE … confirmed that it has not … reach[ed] any independent conclusions

regarding RIN cost passthrough."); *see also* Pet.App. EPA-HQ-OAR-2021-0566-0104, at 2. EPA's sham consultation does not meet Congress's requirement.

4. EPA's failure to evaluate and decide each hardship petition on its individual merits is not remedied by EPA's "confidential, refinery-specific appendices" or EPA's unsupported assertion that it "reviewed all the information the small refineries and other interested parties submitted." Pet.App. EPA-HQ-OAR-2021-0566-0117, at 18. Still now, the *only* Hunt-specific fact that EPA mentions in support of its Denials is *one contract* with Shell for E10 gasoline, EPA.Br.43-44, and that contract is a textbook example of Hunt's disproportionate economic hardship. *See* pp. 25-26, *infra*. EPA says that Hunt "waive[d] any argument" about "EPA's specific conclusion on the operation of RIN discount at Hunt's refinery." EPA.Br.44 n.9. Not true. Hunt has repeatedly argued that it does not "recover the cost of RINs in the price of the gasoline" it sells. Hunt.Br.21-22, 55-56; Pet.App. JD-498 at K-8-9.

## IV. EPA's brief confirms that the Denials are arbitrary and capricious.

Hunt showed that the Denials are arbitrary and capricious because they are based on a new economic theory that is provably false, and GAO agrees. Hunt.Br.49-57 (citing *State Farm*, 463 U.S. at 34, 43); *see also* GAO Report 9-13, 18. EPA's new theory is that all parties pay the same costs of RFS compliance because every party passes through its

compliance costs to customers ("passthrough"). But EPA's brief shows that undisputed facts, including its own December 2022 RIN Price Analysis, prove that theory false.

First, EPA concedes that its "passthrough" theory depends on ratable RIN purchases, EPA.Br.53-54, ████████████████████. The theory thus was counter to the evidence before the agency, relies on an assumption that Congress did not intend, and ignores an important aspect of the problem.

EPA now claims that, even if Hunt did not purchase RINs ratably, it still recovered "an amount" from selling fuel that it could use to purchase RINs later and thereby pass through its costs. EPA.Br.53. That argument was not part of the Denials, which assumed ratable RIN purchases without equivocation. *See* EPA-HQ-OAR-2021-0566-0117, at 55-56. This Court should not review EPA's counsel's post-hoc rationalization. *See Hewitt v. Comm'r of IRS*, 21 F.4th 1336, 1342 (11th Cir. 2021). In any event, anything less than complete passthrough fails to support EPA's conclusion that all parties have the same compliance costs.

Second, GAO found and EPA itself confirmed that small refineries pay more for RINs and sell them for less than larger entities, so all parties do *not* experience the same compliance costs. *See* December 2022 RIN Price Analysis 1; GAO Report 67. Without that foundational assumption, the entire RIN-cost-passthrough theory crumbles.

EPA now argues that its identified price differences are "small" and "not statistically significant." EPA.Br.52. But even after cherry-picking 24 unidentified small refineries, excluding actual market transactions that it considered "outliers," and including data from five earlier years when RINs were much cheaper (2013 to 2017), EPA concluded that small refineries paid *up to 7.5% more* than the daily average price for RINs. December 2022 RIN Price Analysis 1-3, 9. The percentage could be higher for any particular small refinery, and even a 7.5% difference causes significant problems for Hunt, which would need to buy ███████████ RINs for the 2018–2021 compliance years at issue here. EPA even found that small refineries that purchase RINs ratably (as EPA now claims Hunt should have) could actually pay disproportionately *more* for those RINs than if they purchase them later. *Id.* at 1. EPA's counsel are not statisticians, and they are not qualified to baldly assert that the price differences are "not statistically significant" when the agency has not made that determination. *See id.* at 6.

EPA asks this Court to bury its head in the sand by ignoring the damning GAO Report. EPA.Br.51. But this Court can and should consider that Report: GAO analyzed the same data that was before the agency at the time EPA denied Hunt's petitions, not *new* information. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985) (the "focal point for judicial review" is the record in existence, not new information). The GAO Report is highly relevant to this Court's determination whether

PUBLIC VERSION – CONFIDENTIAL BUSINESS INFORMATION REDACTED

EPA acted arbitrarily and capriciously in denying Hunt's hardship petitions. EPA says that the Seventh Circuit found a different GAO report unhelpful in *United States v. Wiszowaty*, 506 F.3d 537 (2007). That report "would not have helped the jury determine" the particular facts in dispute in that case. *Id.* at 541.

Third, EPA's response brief confirms that EPA's theory has huge gaps. EPA did not study—and still has not studied—whether its fundamental assumption of RIN passthrough applies to diesel fuel, which small refineries disproportionately produce and which cannot be blended with renewable fuel at anywhere close to the same rates as gasoline due to lack of market acceptance. EPA's unsupported, single-sentence footnote (Br.57) claiming that "[t]he RIN cost passthrough principle also operates for the sale of diesel blendstock" is perhaps the most obvious example of the slipshod reasoning that characterizes EPA's Denials.

EPA also did not study (and still hasn't) the local-market variations demonstrated by refinery-specific data. EPA can say only that it "*generally rejected* the notion that regional variation prevents complete passthrough." EPA.Br.56 (emphasis added).

EPA ignored the Hunt-specific evidence proving that the new passthrough theory did not apply to Hunt. EPA says (Br.43) that one contract for Hunt to sell E10 blended fuel to Shell supports its theory of "RIN discount," whereby a seller of blended fuel (1) "discount[s] … the sales price" by the price of the RIN and then (2) collects revenue from "selling

the RINs generated from blending." EPA.Br.43. But in fact the Hunt-Shell contract *undermines* EPA's conclusion. That contract shows that Hunt (1) must discount the price of the blended fuel it sells to Shell by the price of the RIN in order to compete. Pet.App. JD-498 at K-8-9. But what EPA tries to obscure is the undisputed fact that Hunt *cannot* (2) recover revenue from selling the RIN, which Hunt needs to retire for RFS compliance (absent an exemption). *Id.* Unlike large integrated refiners that can sell extra RINs for revenue, small refineries like Hunt cannot blend enough fuel to generate sufficient RINs to comply with the RFS. Thus, the contract that EPA invokes serves only to prove the falsity of EPA's claim that small refineries are not disproportionately burdened by the RFS and passthrough their costs. Instead of analyzing Hunt-specific information, as Congress told EPA to do in the CAA, EPA came up with a flawed and incomplete macroeconomic theory and then summarily rejected all contradictory evidence.

The GAO Report shows that EPA cannot rely (EPA.Br.44) on *Alon Refining Krotz Springs, Inc. v. EPA*, 936 F.3d 628, 649 (D.C. Cir. 2019), to support its RIN discount and passthrough theories. The report dismantles EPA's reliance on the studies that led to the 2017 Point of Obligation Denial at issue there. GAO found these studies "limited" in utility, as they examined "only … three fuel markets." GAO Report 11. EPA claims that it "has considered more market data and further solidified its conclusions," EPA.Br.44, but GAO determined that "EPA [still] does not

have assurance that its conclusion that all small refineries recover the cost of RINs in the price of the gasoline and diesel they sell is based on quality information," GAO Report 12. Indeed, EPA's subsequent December 2022 RIN Price Analysis cuts against its Denials.

At bottom, EPA failed to do what the statute requires: analyze whether *this petitioner* has demonstrated disproportionate economic hardship for the compliance years at issue. Because EPA failed to follow the law, this Court must set aside the Denials.

## CONCLUSION

This Court should remand Hunt's hardship petitions to EPA with instructions to reinstate the 2018 hardship exemption previously granted, and to either grant the 2019–2021 petitions or else mitigate the harm to Hunt by permitting it to utilize the alternative compliance method that EPA offered for 2018—a method that would not require Hunt to retire RINs for the compliance years under review.

Dated: May 19, 2023

Respectfully submitted,

*s/ Jonathan G. Hardin*

Jonathan G. Hardin
Alexandra M. Bromer
Michael R. Huston
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: 202.654.6297
Facsimile: 202.654.6211
JHardin@perkinscoie.com
ABromer@perkinscoie.com
MHuston@perkinscoie.com

*Attorneys for Hunt Refining Company*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. As measured by the word-processing system used to prepare this brief, the brief contains 6,477 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), and complies with the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a 14 point proportionally spaced roman-style typeface (Century Schoolbook).

Date: May 19, 2023            */s/ Jonathan G. Hardin*
                             Jonathan G. Hardin

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2023, I electronically filed the redacted version of the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system. I further certify that the sealed version of Petitioner's Brief was submitted to the Court in paper format in a sealed envelope and will be received by the clerk within ten days of filing in accordance with Eleventh Circuit Rule 25-3(h), and an electronic copy of the sealed Brief will provided to Respondent's counsel via electronic means.

Date: May 19, 2023

*/s/ Jonathan G. Hardin*
Jonathan G. Hardin